# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ ) | |
| GAYLE MORALES,                  ) | |
|                                 ) | |
|                    Plaintiff    ) | |
|                                 ) | |
|         v.                      ) | Docket No:_____ |
|                                 ) | |
|                                 ) | **JURY TRIAL** |
|                                 ) | **DEMANDED** |
| FROSS, ZELNICK, LEHRMAN & ZISSU, ) | |
| P.C., LEO KITTAY, JAMES D.      ) | |
| WEINBERGER AND TERRY RAPHAEL    ) | |
|                                 ) | |
|                                 ) | |
|                    Defendants   ) | |
| _____) | |

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The plaintiff, Gayle Morales ("Ms. Morales" or "Plaintiff"), is a female resident of the State of New York residing at 30-80 32nd Street, Apartment 14, Astoria, NY 11102.

2.      Defendant Fross, Zelnick, Lehrmann & Zissu, P.C. (the "Company") is a New York Professional Corporation with its principal office located at 151 West 42nd Street, 17th Floor, New York, NY 10036.

3.      Defendant Leo Kittay ("Kittay") is an adult male, and, upon information and belief, resides in New York. At all relevant times, Kittay was a Partner of the Company. Kittay is named in both his individual and official capacities.

4.      Defendant James D. Weinberger ("Weinberger") is an adult male, and, upon information and belief, resides in New York. At all relevant times, Weinberger was a Partner of the Company. Weinberger is named in both his individual and official capacities.

5.      Defendant Terry Raphael ("Raphael") is an adult female, and, upon information and belief, resides in New Jersey. At all relevant times, Raphael was the head of Human Resources of the Company. Raphael is named in both her individual and official capacities.

## JURISDICTION AND VENUE

6.      The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff has brought federal claims, including claims under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.*, the Americans with Disability Act ("ADA") 42 U.S.C. §§ 1201 *et seq.*, and the Family and Medical Leave Act (FMLA), 29 U.S.C. §2615. The court may exercise supplemental jurisdiction over Ms. Morales' state law and city law claims. 28 U.S.C. § 1367.

7.      Venue is appropriate in the Southern District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in Southern District of New York.

8.      This court has personal jurisdiction over Defendants Kittay and Weinberger because they are residents of the state of New York. Additionally, Kittay, Weinberger and Raphael have numerous contacts and connections with and within New York. For example, Kittay, Weinberger and Raphael worked for the Company in the State of New York, supervised Ms. Morales in the State of New York and terminated Ms. Morales in the State of New York.

9.      This court has personal jurisdiction over the Company because the Company is a resident of New York because it is incorporated in New York and its principal place of business is in New York.  Additionally, the Company has engaged in and transacted business in the State

of New York, including by employing the Plaintiff and other employees in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by the Company within the State of New York. The Company also provided products and/or services to customers in the State of New York, and the Plaintiff provided those products and/or services to customers in the State of New York. Indeed, the Plaintiff was employed by the Company in the State of New York, was managed and reprimanded by the Company in the State of New York and was terminated by the Company in the State of New York.

## STATEMENT OF FACTS

10.     Ms. Morales is a 61-year-old woman who was born in 1959.

11.     In or around May 2006, Ms. Morales was hired by the Company as a paralegal in New York, NY in the borough of Manhattan.

12.     At all relevant times, the worksite of Ms. Morales was the Company's principal office located at 151 West 42nd Street, 17th Floor, New York, NY 10036.

13.     During all relevant times, the Company was engaged in commerce or in an industry or activity affecting interstate commerce and employed 50 or more employees during 20 or more calendar weeks.

14.     At all relevant times, the Company employed 50 or more employees within a 75-mile radius of Ms. Morales' worksite.

15.     Accordingly, at all relevant times, the Company was a covered employer under the Family and Medical Leave Act ("FMLA").

16.     At all relevant times (at least as of May 2007), Ms. Morales had worked for the Company for at least 12 months and in excess of 1250 hours during the preceding 12-month period, and as such was eligible for FMLA leave.

17.     At all relevant times, Mr. Morales was qualified for her position at the Company and her work performance was satisfactory.

18.     Throughout Ms. Morales' employment, Kittay, Weinberger and Raphael were Ms. Morales' managers. Indeed, Kittay, Weinberger and Raphael had the power to hire and/or fire Ms. Morales, supervised and controlled Ms. Morales' conditions of employment including her work schedule, played a role in determining Ms. Morales' rate and method of payment, and/or played a role in maintaining Ms. Morales' employment records.

19.     Kittay, Weinberger and Raphael are all more than 15 years younger than Ms. Morales.

20.     Upon information and belief, Kittay, Weinberger and Raphael are non-disabled.

21.     At all relevant times, Ms. Morales suffered from sciatica and spinal stenosis.

22.     Ms. Morales' sciatica and spinal stenosis are (both individually and collectively) physical impairments that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, sitting, standing and walking. As such, at all relevant times, Ms. Morales was disabled under the Americans with Disabilities Act ("ADA"), the New York Human Rights Law and New York City Human Rights Law.

23.     These sciatica and spinal stenosis disabilities, for which Ms. Morales received continuing care, were also serious medical conditions under the FMLA at all relevant times.

24.     Ms. Morales revealed her sciatica and spinal stenosis disabilities to Raphael, Kittay, Weinberger and the Company shortly after being hired.

25.     In or around January 2017, Ms. Morales suffered a knee injury at work when she tripped over a box in an office at the Company, causing increased pain to her sciatica disability.

26.     Due to this disability-related pain, Ms. Morales went to her doctor to receive treatment.

27.     During this treatment, Ms. Morales' doctor told her that she would need knee surgery in order to control this pain from her sciatica.

28.     Ms. Morales went to Raphael and requested the reasonable accommodation of being allowed to take disability-related leave of absence to undergo this sciatica-related knee surgery and recover, which was also a request for continuous FMLA leave.

29.     Raphael approved Ms. Morales' reasonable accommodation and FMLA leave request.

30.     Ms. Morales was able to return to work after this leave, however, in or around November 2018, Ms. Morales started to have increased pain from her sciatica and spinal stenosis disabilities.

31.     Indeed, Ms. Morales was in excruciating pain from flare-ups due to her sciatica and spinal stenosis disabilities when she had flare-ups due to her sciatica and spinal stenosis disabilities. Thus, during periods of disability-related flare-ups, Ms. Morales had difficulty working due to the pain.

32.     At this time, Ms. Morales asked Raphael for the reasonable accommodation of taking intermittent time off to be able to manage the pain from her disabilities.

33.     This was also a request for intermittent FMLA leave for Ms. Morales' disabilities.

34.     Indeed, Ms. Morales' doctor had recommended that Ms. Morales take intermittent time off for her disabilities, and filled out FMLA paperwork for this request.

35.     Raphael approved this request, which allowed Ms. Morales the needed time off under the FMLA to recover from disability-related flare-ups and otherwise manage the pain from her disabilities.

36.     Using these accommodations and intermittent leave, Ms. Morales was still able to perform the essential functions of her job at a fully satisfactory level.

37.     However, in or around January 2019, shortly after this intermittent leave request was granted, Ms. Morales noticed that the Company was starting to hire new, younger paralegals.

38.     The average age of these new hires was around 30 years younger than Ms. Morales.

39.     As a result of these new, younger hires, Ms. Morales had several responsibilities taken away from her and given to new, younger paralegals.

40.     For example, Kittay and Weinberger moved a majority of the responsibility for their case management away from Ms. Morales and to two younger non-disabled recently hired paralegals.

41.     Concerned by the reassignment of her duties to these new younger paralegals, Ms. Morales raised protected concerns to Raphael that the removal of these responsibilities (especially by Kittay and Weinberger) was discriminatory against her due to her age and disability, and that she was worried that it might be the Company's intention to have these younger non-disabled paralegals replace her.

42.     Raphael dismissed Ms. Morales' protected concerns and would not address her concerns with Kittay or Weinberger.

43.     The pattern of hiring younger paralegals in the Company and using them to replace older paralegals continued despite Ms. Morales raising protected concerns.

44.     In or around November 2019, Ms. Morales had her annual review with Raphael, which had significant input from both Kittay and Weinberger as her supervisors.

45.     While Ms. Morales' annual review was extremely positive, Raphael stated that Ms. Morales' pay raise was being withheld due to excessive absenteeism.

46.     Other than normal PTO provided pursuant to Company policy, the only absences that Ms. Morales had during 2019 were approved leave for her disabilities that were protected by the FMLA.

47.     As such, Kittay, Weinberger, and Raphael were withholding Ms. Morales' pay raise due to Ms. Morales taking protected FMLA leave for her disabilities.

48.     Ms. Morales raised protected concerns to Raphael that she was being improperly denied this pay raise in retaliation for taking FMLA leave for her disabilities, or otherwise due to her age or disabilities.

49.     Ms. Morales additionally raised protected concerns that by denying this pay raise due to alleged absenteeism, this amounted to an improper retroactive denial of her protected leave for her disabilities.

50.     Raphael dismissed Ms. Morales' protected concerns and stated that there would be a re-review of her alleged absenteeism in 6 months.

51.     In the months thereafter, Ms. Morales' sciatica and spinal stenosis started to flare-up more frequently.

52.     On or around the end of December 2019, Ms. Morales disability-related pain flared up to the point that she could not get out of bed.

53.     Ms. Morales called Raphael and requested the reasonable accommodation of taking time off to recover from this flare-up of her disabilities, which also constituted a request for time off under the FMLA.

54.     Raphael approved this request, and Ms. Morales was able to take leave starting on January 2, 2020, during which she received treatment and was ultimately able to largely recover from her disability-related flare-up.

55.     On or around January 14, 2020, Ms. Morales returned to work with reduced pain. Her entire period of time off of work associated with this leave of absence was protected under the FMLA.

56.     Unfortunately, approximately one week later, on or around January 21, 2020, Ms. Morales experienced an excruciating flare-up of her spinal stenosis and sciatica disabilities.

57.     The same day, after work hours, Ms. Morales went to her doctor to receive treatment for this flare-up.

58.     Ms. Morales' doctor recommended that Ms. Morales take an extended leave to be able to recover from her latest flare-up.

59.     During this time, Ms. Morales had been on prescription pain medication treatment for her spinal stenosis and sciatica disabilities.

60.     Ms. Morales had started to grow concerned that she was becoming addicted to the pain medication prescribed by her doctor, which primarily constituted prescription opioid-derived pain medication.

61.     During this visit, Ms. Morales conveyed to her doctor her concern that she was addicted to prescription pain medication and asked her doctor about taking leave to treat her

prescription opioid addiction that had resulted as a side effect of her disabilities and the disability-related medical treatment provided by her doctor.

62.     Ms. Morales' prescription opioid addiction is a physical impairment that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, control of her pain, walking and interacting with others. Ms. Morales' opioid addiction further, at all relevant times, substantially limited the operation of one or more major bodily functions, including, but not limited to, brain, emotional and/or neurological functions. As such, at all relevant times, Ms. Morales was further disabled under the Americans with Disabilities Act ("ADA"), the New York Human Rights Law and New York City Human Rights Law. This disability, for which Ms. Morales received continuing care, were also serious medical conditions under the FMLA at all relevant times.

63.     Ms. Morales' doctor recommended extended leave for the treatment of her opioid addiction as well.

64.     On or around January 23, 2020, Ms. Morales requested from Raphael the reasonable accommodation of taking leave to receive treatment for both her previously disclosed disabilities and for her addiction to prescription opioids related to her disabilities, which was also a request for FMLA leave.

65.     Raphael approved this request for leave constating both FMLA leave and a disability-related reasonable accommodation and requested renewed FMLA paperwork.

66.     Ms. Morales submitted the requested FMLA paperwork in a timely manner and the Company affirmed that the leave was approved.

67.     Accordingly, Ms. Morales commenced her approved FMLA leave starting on January 27, 2020.

68.     Ms. Morales kept in contact with Raphael during her leave, updating her as to the status of her recovery for her disabilities.

69.     On or around March 20, 2020, having completed opioid addiction treatment, and by which time the pain from the flare-up of her sciatica and spinal stenosis disabilities was subsiding, Ms. Morales contacted Raphael, Kittay and Weinberger and informed them that she would coming back to work as of April 1, 2020.

70.     Ms. Morales' request to extend her leave through April 1, 2020 also constituted a request for a disability-related accommodation.

71.     Raphael confirmed receipt of this note and said that Ms. Morales would be able to return to work on April 1, 2020. Other than this one communication, the Company did not engage in any interactive dialogue with Ms. Morales concerning her accommodation request.

72.     As such, even if Ms. Morales had exceeded her FMLA leave as of the end date of her request (which she did not), the Company additionally approved the extension to her leave as a disability-related accommodation request.

73.     However, on or around March 30, 2020, two days before Ms. Morales was due to return from her protected FMLA leave (leave that was still protected under the FMLA), Raphael called Ms. Morales and informed her that she was terminated for absenteeism.

74.     The absenteeism that Raphael cited to Ms. Morales was exclusively during periods where Ms. Morales was on protected FMLA leave for her disabilities. Thus, the Company essentially admitted that Ms. Morales was terminated for taking protected disability-related FMLA leave, and likewise essentially retroactively denied this leave by terminating Ms. Morales for absences that occurred during the leave.

75.     Ms. Morales raised protected concerns to Raphael that her termination was due to her disabilities, or in retaliation for taking FMLA leave, only to be ignored by Raphael.

76.     Furthermore, other than being denied a pay raise due to FMLA-protected absences, the Company had not provided Ms. Morales with any progressive discipline related to the alleged performance concerns.

77.     Due to the lack of progressive discipline, and the fact that Ms. Morales had received a largely positive performance review before going out on leave, it was clear that the excuses for her termination constituted a pretext designed to cover up the discriminatory and retaliatory reasons for the termination.

78.     Indeed, Raphael admitted that Ms. Morales was being terminated, in whole or in part, for absenteeism protected under the FMLA.

79.     As such, Ms. Morales was involuntarily terminated from the Company on March 30, 2020.

80.     By terminating Ms. Morales at the time it did, the Company denied the disability-related accommodation of extended leave to April 1, 2020 requested by Ms. Morales, which was covered under the FMLA.

81.     Ms. Morales was also withheld a pay raise due to taking protected FMLA leave for her disabilities, as the Defendants alleged absenteeism for time Ms. Morales took as FMLA leave.

82.     Additionally, the Company has later alleged that Ms. Morales was terminated for performance concerns, only after filing a Charge with the New York City Commission on Human Rights, while Ms. Morales had never received a negative review or discipline from Raphael, Kittay or Weinberger alleging that her performance was unsatisfactory.

83.     Indeed, Ms. Morales' last performance review (which was before her protected FMLA leave), indicated that she was exceeding expectations in terms of her performance.

84.     Additionally, other non-disabled and younger employees, including paralegals, were given the benefit of taking extended leave, including leave that exceeded FMLA protections, and were restored to their positions at the end of their leave.

85.     Indeed, other non-disabled and younger employees with a history of poor performance were given time to respond to any performance-related concerns before any disciplinary actions were taken, and certainly before being terminated.

86.     It is clear that the Company's allegations about performance concerns were a pretextual excuse for the termination of Ms. Morales, as the alleged performance concerns (which were inaccurate and untrue) were raised for the first time by the Company as an alleged excuse for the termination only after Ms. Morales filed a Charge with the New York City Commission on Human Rights.

87.     Furthermore, Ms. Morales was terminated while on protected FMLA leave for her disabilities.

88.     Upon information and belief, the Company replaced Ms. Morales with a similarly or lesser qualified younger, non-disabled individual.

89.     Ms. Morales' termination took place in New York City and the Company in fact fired Ms. Morales in New York City.

90.     On October 30, 2020, Ms. Morales timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

91. On March 10, 2021, Ms. Morales' case was voluntarily dismissed (at her request) from the NYCCHR via an administrative convenience dismissal and she gained her right to bring her case to Court.

92. On May 10, 2021, the EEOC issued Ms. Morales a Right to Sue letter.

93. This lawsuit is timely filed.

## COUNT I

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. the Company**

94. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

95. At all relevant times, Ms. Morales' sciatica and spinal stenosis were physical impairments that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, prolonged sitting, standing and walking. As such, at all relevant times, Ms. Morales was disabled under the Americans with Disabilities Act ("ADA").

96. During the period of her employment in 2020, Ms. Morales' prescription opioid addiction, was a physical impairment that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, control of her pain, walking and interacting with others. Ms. Morales' opioid addiction further, at all relevant times, substantially limited the operation of one or more major bodily functions, including, but not limited to, brain, emotional and/or neurological functions. As such, at all relevant times, Ms. Morales was further disabled under the Americans with Disabilities Act ("ADA").

97.     At all relevant times, Ms. Morales was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

98.     Ms. Morales disclosed her disabilities to the Company and/or the Company was aware of Ms. Morales' disabilities and/or the Company regarded Ms. Morales as disabled.

99.     Ms. Morales requested disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included taking intermittent, as well as continuous, time off from work for treatment and recovery when she had a flare-up of one or more of her disabilities, as well as when she was undergoing treatment for her prescription opioid addiction.

100.    The Company failed to provide Ms. Morales with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by denying Ms. Morales a pay raise for using protected leave(s) for her disabilities, not allowing Ms. Morales to stay on protected leave for her disabilities through April 1, 2020, and, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, thereby failing to let Ms. Morales truly take a leave for her disabilities.

101.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Morales' disability-related accommodations requests, including her request for time off to receive treatment for her disabilities and/or future time off for treatment for her disabilities through terminating her.

102.     Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less burdensome alternative accommodations that could have been identified through an interactive dialogue.

103.     Indeed, if Ms. Morales had been told that extending her leave through April 1, 2020 would have constituted an undue burden for the Company, then she would have sought alternative accommodations, including potential accommodations that would have allowed her to return to work before April 1, 2020, potentially with alternative accommodations.

104.     Furthermore, Ms. Morales' requested disability-related accommodations did not pose an undue burden on the Company.

105.     The Company, by and through its agents, discriminated against Ms. Morales due to her disabilities by subjecting Ms. Morales to adverse actions including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a pay raise, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, , and/or terminating Ms. Morales' employment.

106.      The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Morales.

107.     As a direct and proximate result of the Company's violation of the ADA, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

108.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT II**

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including the Company, Raphael, Kittay and Weinberger)**

109.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

110.    At all relevant times, Ms. Morales' sciatica and spinal stenosis are physical impairments that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, prolonged sitting, standing and walking. As such, at all relevant times, Ms. Morales was disabled under the New York State Human Rights Law ("NYSHRL").

111.    Ms. Morales' opioid addiction is a physical impairment that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, control of her pain, walking and interacting with others. Ms. Morales' opioid addiction further, at all relevant times, substantially limited the operation of one or more major bodily functions, including, but not limited to, brain, emotional and/or neurological functions. As such, at all relevant times, Ms. Morales was further disabled under the NYSHRL.

112.    At all relevant times, Ms. Morales was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

113.    Ms. Morales disclosed her disabilities to the Company and/or the Company was aware of Ms. Morales' disabilities and/or the Company regarded Ms. Morales as disabled.

114.    The Company failed to engage in an interactive dialogue related to some or all of Ms. Morales' reasonable accommodation requests, including but not limited to taking intermittent and continuous time off from work for treatment and recovery when he had a flare-up of her disabilities.

115.    Ms. Morales' requested disability-related accommodations did not pose an undue burden on the Company.

116.    The Company failed to provide Ms. Morales with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by denying Ms. Morales a pay raise for using protected leave(s) for her disabilities, not allowing Ms. Morales to stay on protected leave for her disabilities through April 1, 2020, and, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, thereby failing to let Ms. Morales truly take a leave for her disabilities.

117.    The Company, by and through its agents, discriminated against Ms. Morales due to her disabilities by subjecting Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or

terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment while she was on protected leave for her disabilities.

118.    Kittay, Weinberger and Raphael aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Mr. Morales due to her disabilities, and/or knew of their supporting role in an enterprise designed to deprive Ms. Morales of the rights guaranteed to her under the NYSHRL.

119.    The Defendants' actions were wanton, malicious, and/or oppressive.

120.    The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Morales.

121.    As a direct and proximate result of the Company's violation of the NYSHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

122.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT III**

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Raphael, Kittay and Weinberger)**

123.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

124.    At all relevant times, Ms. Morales' sciatica and spinal stenosis are physical impairments that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, prolonged sitting, standing, and walking. As such, at all relevant times, Ms. Morales was disabled under the New York City Human Rights Law ("NYCHRL").

125.    Ms. Morales' opioid addiction is a physical impairment that substantially limited one or more of Ms. Morales' major bodily functions including, but not limited to, control of her pain, walking and interacting with others.  Ms. Morales' opioid addiction further, at all relevant times, substantially limited the operation of one or more major bodily functions, including, but not limited to, brain, emotional and/or neurological functions. As such, at all relevant times, Ms. Morales was further disabled under the NYCHRL.

126.    At all relevant times, Ms. Morales was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

127.    Ms. Morales disclosed her disabilities to the Company and/or the Company was aware of Ms. Morales' disabilities and/or the Company regarded Ms. Morales as disabled.

128.     The Company failed to engage in an interactive dialogue related to some or all of Ms. Morales' reasonable accommodation requests, including but not limited to taking intermittent and continuous time off from work for treatment and recovery when she had a flare-up of her disabilities.

129.     Ms. Morales' requested disability-related accommodations did not pose an undue burden on the Company.

130.     The Company failed to provide Ms. Morales with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by denying Ms. Morales a pay raise for using protected leave(s) for her disabilities, not allowing Ms. Morales to stay on protected leave for her disabilities through April 1, 2020, and, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, thereby failing to let Ms. Morales truly take a leave for her disabilities.

131.     The Company, by and through its agents, discriminated against Ms. Morales due to her disabilities by subjecting Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment while she was on protected leave for her disabilities.

132.     Kittay, Weinberger and Raphael aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Mr. Morales due to her disabilities,

and/or knew of their supporting role in an enterprise designed to deprive Ms. Morales of the rights guaranteed to her under the NYCHRL.

133.     The Defendants' actions were wanton, malicious, and/or oppressive.

134.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Morales.

135.     As a direct and proximate result of the Company's violation of the NYCHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

136.     Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

### (Age Discrimination in Violation of the Age Discrimination in Employment Act)

### Plaintiff v. the Company

137.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

138.     During all relevant times, the Company was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter, "ADEA") because the

Company employed 20 or more individuals for 20 or more calendar weeks during the relevant calendar years.

139.    The Company, by and through its agents, harassed and discriminated against Ms. Morales with respect to her compensation, terms, conditions, and/or privileges of employment, because of Ms. Morales' age and/or because Ms. Morales was an older disabled individual ("age plus" discrimination).

140.    More specifically, the Company subjected Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment, because of Ms. Morales' age and/or because Ms. Morales was a disabled individual who was over 40 years old ("age plus" discrimination).

141.    The Company actions were willful and undertaken in bad faith to the federally protected rights of Ms. Morales.

142.    As a direct and proximate result of the Company's violations of the ADEA, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

143.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT V

**(Age Discrimination in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v.  All Defendants (including the Company, Raphael, Kittay and Weinberger)**

144.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

145.     At all relevant times, Ms. Morales was over 40 years old.

146.     The Company, by and through its agents harassed and discriminated against Ms. Morales with respect to her compensation, terms, conditions, and/or privileges of employment, because of Ms. Morales' age and/or because Ms. Morales was an older disabled individual ("age plus" discrimination).

147.     More specifically, the Company subjected Ms. Morales to adverse actions including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences and/or terminating Ms. Morales' employment because of  Ms. Morales' age and/or because Ms. Morales was a disabled individual who was over 40 years old ("age plus" discrimination).

148.     Kittay, Weinberger and Raphael aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Mr. Morales due to her age, and/or

knew of their supporting role in an enterprise designed to deprive Ms. Morales of the rights guaranteed to her under the NYSHRL.

149.    The Defendants' actions were wanton, malicious, and/or oppressive.

150.    The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Morales.

151.    As a direct and proximate result of the Defendant**s'** violations of NYSHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

152.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), attorneys' fees, interest, and costs.

**COUNT VI**

**(Age Discrimination in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Raphael, Kittay and Weinberger)**

153.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

154.    At all relevant times, Ms. Morales was over 40 years old.

155.    The Company, by and through its agents harassed and discriminated against Ms. Morales with respect to her compensation, terms, conditions, and/or privileges of employment, because of Ms. Morales' age and/or because Ms. Morales was an older disabled individual ("age plus" discrimination).

156.    More specifically, the Company subjected Ms. Morales to adverse actions including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment because of  Ms. Morales' age and/or because Ms. Morales was a disabled individual who was over 40 years old ("age plus" discrimination).

157.    Kittay, Weinberger and Raphael aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Mr. Morales due to her age, and/or knew of their supporting role in an enterprise designed to deprive Ms. Morales of the rights guaranteed to her under the NYCHRL.

158.     The Defendants' actions were wanton, malicious, and/or oppressive.

159.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Morales.

160.     As a direct and proximate result of the Defendant**s'** violations of NYCHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

161.     Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), attorneys' fees, interest, and costs.

## COUNT VII

**(Interference with, and Retaliation for Exercising, Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Plaintiff v. All Defendants (including the Company, Kittay, Weinberger and Raphael)**

162.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

163.     During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

164.     As such, at all relevant times, the Company was an employer under the FMLA.

165.     At all relevant times, the Company employed 50 or more employees within 75 miles of Ms. Morales' worksite.

166.     At all relevant times (from at least May 2007 onward), Ms. Morales had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

167.     As such, from May 2007 onward, Ms. Morales was an eligible employee under the FMLA.

168.     Ms. Morales suffered from one or more serious health conditions for which she received continuing care, including, but not limited to, sciatica, spinal stenosis, and opioid addiction.

169.     Ms. Morales was eligible for, and entitled to, FMLA leave.

170.     Ms. Morales sought to exercise her rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

171.     Kittay was an employer under the FMLA because he had the power to hire and/or fire Ms. Morales (and in fact used this power to fire Ms. Morales), supervised and controlled Ms. Morales' conditions of employment including her work schedule, played a role in determining Ms. Morales' rate and method of payment, and/or maintained Ms. Morales' employment records.

172.     Weinberger was an employer under the FMLA because he had the power to hire and/or fire Ms. Morales (and in fact used this power to fire Ms. Morales), supervised and

controlled Ms. Morales' conditions of employment including her work schedule, played a role in determining Ms. Morales' rate and method of payment, and/or maintained Ms. Morales' employment records.

173.    Raphael was an employer under the FMLA because she had the power to hire and/or fire Ms. Morales (and in fact used this power to fire Ms. Morales), supervised and controlled Ms. Morales' conditions of employment including her work schedule, played a role in determining Ms. Morales' rate and method of payment, and/or maintained Ms. Morales' employment records.

174.    Ms. Morales timely notified the Company that she would need FMLA leave and properly completed, and timely turned in, leave-related paperwork requested by the Company concerning each of her leave requests.

175.    Specifically, Ms. Morales sought to exercise intermittent and continuous FMLA leave in the form of taking leave from the Company to attend needed doctor's appointments for her disabilities and to receive treatment for, and to recover related to, her disabilities.

176.    Ms. Morales did in fact utilize continuous and intermittent FMLA leave for her disabilities to attend needed doctor's appointments for her disabilities and receive treatment for, and to recover related to, her disabilities.

177.    Defendants, including by and through their agents, interfered with Ms. Morales' rights under the FMLA by not restoring Ms. Morales to the same or equivalent position when she sought to return to work, by terminating her while she was on a protected FMLA leave (thereby denying her the remainder of her leave), and by disciplining and/or terminating Ms. Morales for absences that were protected under the FMLA (as well as for work that was not performed on

days she was on leave), which thus constituted a retroactive denial of the FMLA leave requested by Ms. Morales.

178.    Ms. Morales engaged in protected activity under the FMLA, including by expressing protected concerns that she was being discriminated against for taking leave, and that the Company was retaliating against her for using FMLA leave.

179.    Indeed, the Defendants, including by and through their agents, retaliated and/or discriminated against Ms. Morales for requesting and/or utilizing FMLA leave, as well as for expressing concerns about retaliation against her for utilizing such FMLA leave, by subjecting Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment

180.    The Defendants' actions, including its violations of the FMLA, were willful and undertaken in bad faith.

181.    As a direct and proximate result of the Defendants' violation of the FMLA, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

182.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e.

double) damages, interest, attorneys' fees, and costs.

## COUNT VIII

**(Retaliation for Engaging in Protected Activity in Violation of New York State**

**Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including the Company, Kittay, Weinberger and**

**Raphael)**

183.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

184.    Ms. Morales engaged in protected activity under the New York State Human

Rights Law ("NYSHRL"), including, but not limited to, (i) requesting and utilizing reasonable

accommodations for her disability(ies) which were intended to allow Ms. Morales to perform the

essential functions of her job, (ii) raising protected concerns related to age and disability-related

harassment and discrimination, and (iii) raising protected concerns related to the improper denial

of requested disability-related accommodations.

185.    Ms. Morales additionally engaged in protected activity under the NYSHRL by

opposing practices forbidden under NYSHRL, including, but not limited to, by expressing

concerns regarding the harassing and discriminatory actions improperly undertaken by the

Company, and by Company employees and agents, based on Mr. Morales' age and disabilities,

including by subjecting Ms. Morales to a harassing and otherwise hostile work environment,

denying her a raise due to supposed absenteeism during protected leaves for her disabilities,

disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged

failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment.

186.    The Company unlawfully coerced, intimidated, threatened and/or interfered with Ms. Morales exercising of or enjoyment of rights granted by the NYSHRL.

187.    The Company, by and through its agents and affiliates, including, but not limited to Kittay, Weinberger and Raphael, harassed and retaliated against Ms. Morales with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Morales' age and/or disabilities

188.    The Company retaliated against Ms. Morales for engaging in protected activity under the NYSHRL, by subjecting Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment.

189.    The Company acted with willful and/or reckless disregard to the state protected rights of Ms. Morales.

190.    As a direct and proximate result of the Company's violation of the NYSHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

191.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),
damages for emotional distress (including, but not limited to, damages for emotional pain,
suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages,
attorneys' fees, interest, and costs.

## COUNT IX

**(Retaliation for Engaging in Protected Activity in Violation of New York City
Human Rights Law, Title 8 of the Administrative Code of the City of New York)
Plaintiff v. All Defendants (including the Company, Kittay, Weinberger and
Raphael)**

192.     The Plaintiff incorporates all paragraphs above and below as if set forth fully
herein.

193.     Ms. Morales engaged in protected activity under the NYCHRL, including, but not
limited to, (i) requesting and utilizing reasonable accommodations for her disability(ies) which
were intended to allow Ms. Morales to perform the essential functions of her job, (ii) raising
protected concerns related to age and disability-related harassment and discrimination, and (iii)
raising protected concerns related to the improper denial of requested disability-related
accommodations.

194.     Ms. Morales additionally engaged in protected activity under the NYCHRL by
opposing practices forbidden under the NYCHRL, including, but not limited to, by expressing
concerns regarding the harassing and discriminatory actions improperly undertaken by the
Company, and by Company employees and agents, based on Ms. Morales' age and disabilities,
including by subjecting Ms. Morales to a harassing and otherwise hostile work environment,

denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment.

195.    The Company, by and through its agents and affiliates, including, but not limited to Kittay, Weinberger and Raphael, harassed and retaliated against Ms. Morales with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Morales' age and/or disabilities

196.    The Company retaliated against Ms. Morales for engaging in protected activity under the NYCHRL, by subjecting Ms. Morales to adverse actions, including, but not limited to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment.

197.    The Company acted with willful and/or reckless disregard to the state protected rights of Ms. Morales.

198.    As a direct and proximate result of the Company's violation of the NYCHRL, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

199.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

### COUNT X

### (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)
### Plaintiff v. the Company

200.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

201.    Ms. Morales engaged in protected activity under the ADA, including, but not limited to, by requesting and/or utilizing reasonable accommodations for her disabilities which were intended to allow Ms. Morales to perform the essential functions of her job, raising protected concerns about harassment and discrimination motivated by her disabilities and being treated in a disparate manner based on her disabilities and raising concerns about the Company's failure to provide requested accommodations for her disabilities, including by subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or terminating Ms. Morales for disability-related absences and/or later alleged failure to perform work while on disability-related absences, and/or terminating Ms. Morales' employment.

202.    The Company retaliated against Ms. Morales for requesting and/or utilizing disability-related reasonable accommodations, raising protected concerns about harassment and discrimination motivated by her disabilities, and for raising protected concerns about the Company's failure to provide requested accommodations for her disabilities, by subjecting Ms.

Morales to adverse actions, including, but not limited to, harassing and otherwise hostile work environment, denying her a raise due to supposed absenteeism during protected leaves for her disabilities, issuing Ms. Morales inaccurate and undeserved negative performance reviews, issuing Ms. Morales undeserved pretextual disciplinary actions, and/or terminating Ms. Morales' employment.

203.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Morales' exercising of, or enjoyment of, one or more rights granted by the ADA.

204.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Morales.

205.    As a direct and proximate result of the Company's violation of the ADA, Ms. Morales' suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

206.    Ms. Morales' seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT XI

### (Retaliation in Violation of the Age Discrimination in Employment Act)

### Plaintiff v. the Company

207.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

208.    Ms. Morales engaged in protected activity under the ADEA, including, but not

limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected

activity regarding a hostile work environment based on age and/or (ii) opposing, expressing

protected concerns, and/or engaging in other protected activity related to the harassing and

discriminatory actions taken by the Company due to Ms. Morales' age, including raising

protected concerns about being subjected to disparate treatment due to her age that was worse

than, and inconsistent with, the treatment of younger employees at the Company, including by

subjecting Ms. Morales to a harassing and otherwise hostile work environment, threatening her

job with the hire of many younger paralegals, denying her a pay raise after she raised these

protected concerns, and/or terminating Ms. Morales' employment.

209.    The Company retaliated against Ms. Morales for opposing, expressing protected

concerns, and/or engaging in other protected activity related to one or more practices made

unlawful by the ADEA, by subjecting Ms. Morales to adverse actions, including, but not limited

to, subjecting Ms. Morales to a harassing and otherwise hostile work environment, denying her a

raise due to supposed absenteeism during protected leaves for her disabilities, disciplining and/or

terminating Ms. Morales for disability-related absences and/or later alleged failure to perform

work while on disability-related absences, and/or terminating Ms. Morales' employment, in

whole or in part, because she engaged in protected activities.

210.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Morales' exercising of, or enjoyment of, one or more rights granted by the ADEA.

211.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Morales.

212.    As a direct and proximate result of the Defendants' violations of the ADEA, Ms. Morales as suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

213.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, attorneys' fees, interest, and costs.

## COUNT XII

**(Failure to Pay Overtime in Violation of 29 U.S.C. §§ 201 et seq.)**

**Plaintiff v. All Defendants (including the Company, Kittay, Weinberger and Raphael)**

214.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

215.    At all relevant times, the Company was an enterprise as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter, "FLSA").

216.    Indeed, at all relevant times, the Company had annual gross volume of sales made or business done greater than or equal to $500,000.

217.    Furthermore, at all relevant times, the Company was an enterprise engaged in interstate commerce.

218.    Additionally, during all relevant time periods, Ms. Morales was an employee who was engaged in interstate commerce.

219.    Ms. Morales was not exempt under the FLSA and equivalent state law, and as such was owed overtime pay of 1.5x her base rate when she worked more than 40 hours per week.

220.    The Company was aware that Ms. Morales was a non-exempt employee under the FLSA and equivalent state law and willfully failed to pay Ms. Morales the wages she was owed.

221.    The Defendants scheduled Ms. Morales to work more than 40 hours per week and Ms. Morales did in fact always work more than 40 hours per week.

222.    Ms. Morales would always work a total of at least 8.5 hours a day, five days a week.  All of these hours were working time, as Mr. Morales would work through her lunch period and did not take off other breaks. Thus, Ms. Morales was working for all of these 8.5 hours (or more) per day.

223.    Accordingly, Ms. Morales worked at least 42.5 hours per week every week of her employment.

224.    Furthermore, at a frequency of at least 2 days per week, Ms. Morales would work more than 8.5 hours per day due to the demands of her work. Thus, in most weeks, Ms. Morales in fact worked for more than 42.5 hours, sometimes significantly more.

225.    For example, during the week of February 4, 2019 through February 8, 2019, Ms. Morales worked 55 or more hours due to the demands of a high-profile project for her supervisors, working 10am to 9pm, and working through her lunch break during every day of

this week. This is but one illustrative example of the many weeks in which Ms. Morales worked significantly in excess of 42.5 hours.

226.    Because the attorneys at her employer preferred to work late into the evening, the Ms. Morales would work late into the evening. During her employment, Ms. Morales would arrive at work no later than 10am, would work through her lunch break, and would end work at 6:30pm or later.

227.    As such, Ms. Morales, worked a total of at least 2.5 hours of overtime every week of her employment through her termination on March 30, 2020, and often more.

228.    Ms. Morales was not paid anything extra for the overtime hours she worked, as she received a flat salary and received no extra pay for working overtime hours.

229.    As such, the Defendants paid Ms. Morales less than the wages owed to her under the FLSA and equivalent state law.

230.    Kittay is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Kittay is individually liable under the FLSA.

231.     Weinberger is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Weinberger is individually liable under the FLSA.

232.    Raphael is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because she had

the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Raphael is individually liable under the FLSA.

233.     The Company, as well as Kittay, Weinberger and Raphael, knowingly and willfully failed to pay Ms. Morales all pay that she was owed in violation of the FLSA.

234.     As a direct and proximate result of the Defendants' violations of the FLSA, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost wages.

235.     Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation of the FLSA, interest on the lost wages and liquidated damages, attorneys' fees, and costs.

## COUNT XIII

**(Failure to Pay Overtime in Violation of 12 NYCRR 142 - Promulgated under Article 19 of the New York State Labor Laws)**

**Plaintiff v. All Defendants (including the Company, Kittay, Weinberger and Raphael)**

236.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

237.     The Company is an employer under Part 142 of Title 12 of the Official Compilation of Rules, and Regulations of the state of New York promulgated under Article 19 of the New York State Labor Laws ("12 NYCRR 142") and Ms. Morales is an employee of the Company under 12 NYCRR 142.

238.     Ms. Morales was not exempt from New York overtime pay laws and as such was owed overtime pay of 1.5x her base rate when she worked more than 40 hours per week.

239.    The Company was aware that Ms. Morales was a non-exempt employee under York overtime pay laws and willfully failed to pay Ms. Morales that wages she was owed.

240.    The Defendants scheduled Ms. Morales to work more than 40 hours per week, and Ms. Morales did in fact work more than 40 hours per week.

241.    Ms. Morales would always work a total of at least 8.5 hours a day, five days a week. All of these hours were working time, as Ms. Morales would work through her lunch period and did not take off other breaks. Thus, Ms. Ms. Morales was working for all of these 8.5 hours (or more) per day.

242.    Accordingly, Ms. Morales worked at least 42.5 hours per week every week of her employment.

243.    Furthermore, at a frequency of at least 2 days per week, Ms. Morales would work more than 8.5 hours per day due to the demands of her work. Thus, in most weeks, Ms. Morales in fact worked for more than 42.5 hours, sometimes significantly more.

244.    For example, during the week of February 4, 2019 through February 8, 2019, Ms. Morales worked 55 or more hours due to the demands of a high-profile project for her supervisors, working 10am to 9pm, and working through her lunch break during every day of this week. This is but one illustrative example of the many weeks in which Ms. Morales worked significantly in excess of 42.5 hours.

245.    Because the attorneys at her employer preferred to work late into the evening, Ms. Morales would work late into the evening. During her employment, Ms. Morales would arrive at work no later than 10am, would work through her lunch break, and would end work at 6:30pm or later.

246.    As such, Ms. Morales, worked a total of at least 2.5 hours of overtime every week of her employment through her termination on March 30, 2020, and often more.

247.    Ms. Morales was not paid anything extra for the overtime hours she worked, as she received a flat salary and received no extra pay for working overtime hours.

248.    As such, the Defendants paid Ms. Morales less than the wages owed to her under New York law.

249.    Kittay is an agent or officer of the Company who paid Ms. Morales less than the wages owed to her under New York law.

250.    Weinberger is an agent or officer of the Company who paid Ms. Morales less than the wages owed to her under New York law.

251.    Raphael is an agent or officer of the Company who paid Ms. Morales less than the wages owed to her under New York law.

252.    Defendants knowingly, willfully and in bad faith failed to pay Ms. Morales time and half for overtime pay for all hours worked in excess of 40 hours per week.

253.    As a direct and proximate result of the Defendants' violations of 12 NYCRR 142, Ms. Morales has suffered and continues to suffer damages, including, but not limited to, lost wages, interest lost wages, attorney's fees, and costs.

254.    Ms. Morales seeks all damages to which she is entitled, including, but not limited to, lost wages, liquidated (i.e. double) damages, interest on lost wages, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Gayle Morales, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay), exclusive of interest and costs;

D.  Award the Plaintiff other monetary damages, including but not limited to, damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for her emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff her reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which she is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

GAYLE MORALES

By her attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  May 19, 2021                    By:  __*/s/Trevor Brice*_____

Benjamin J. Wyatt, NY BAR # 700752
BWyatt@Wyattlegalservices.com

Michael Varraso, NY BAR # 701795
mvarraso@wyattlegalservices.com

Trevor R. Brice NY BAR # 6422091
Trevor@wyattlegalservices.com

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868


New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207